UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PATRICIA NELSON,

                    Plaintiff,              Civil Action No. 15-13101
                                             Honorable Terrence G. Berg
v.                                            Magistrate Judge David R. Grand

JONG CHOI, D.D.S.,

                    Defendant.
_____/

## REPORT AND RECOMMENDATION TO DENY
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [38]

Before the Court is a Motion for Summary Judgment filed on November 20, 2017, by Defendant Jong Choi, D.D.S. ("Choi"). (Doc. #38). Plaintiff Patricia Nelson ("Nelson") filed a response to this motion on December 11, 2017 (Doc. #40), and no reply was filed. The Court held oral argument on Choi's motion on January 17, 2018.[1]

**I.**      **RECOMMENDATION**

For the reasons set forth below, **IT IS RECOMMENDED** that Choi's Motion for Summary Judgment (**Doc. #38**) be **DENIED**.

**II.**      **REPORT**

      **A.**      **Factual Background**

At all relevant times, Nelson was incarcerated at the Women's Huron Valley Correctional Facility in Ypsilanti, Michigan. (Doc. #1 at 1). In her complaint, Nelson alleges that Choi, the Regional Dental Director for the Michigan Department of Corrections' ("MDOC") Southern Region, was deliberately indifferent to her serious medical needs when he refused to provide

_____

[1] An Order of Reference was entered on January 22, 2016, referring all pretrial matters to the undersigned pursuant to 28 U.S.C. § 636(b). (Doc. #15).

certain treatment for her temporomandibular joint ("TMJ") disorder.  (*Id.*).

The basic facts of this case – taken primarily from Nelson's MDOC dental records – are fairly straightforward.  It appears that Nelson began complaining of TMJ pain in February 2012.  On February 28, 2012, she was seen for unrelated tooth pain, but she could not open her jaw wide enough for the exam to be performed.  (Doc. #38-3 at 3).  She was told to use moist heat on the joint 3-4 times per day for a week and to do jaw exercises.  (*Id.* at 4).  On March 9, 2012, Nelson again presented with pain in the right TMJ area.  (*Id.*).  She was crying and only able to open her mouth five millimeters.  (*Id.*).  She was advised that warm compresses must be applied consistently in order for any type of improvements to happen, and ibuprofen was prescribed.  (*Id.*).  On April 2, 2012, a request for a visit to an outside specialist (an oral surgeon) was approved.[2]  (*Id.* at 5).

Nelson's dental records next indicate, in relevant part, that, on August 4, 2014, she again complained of TMJ pain.  (*Id.* at 9).  The treating dentist noted:  "I will ask if TMJ eval[uations] are still done by the Oral Surgeon, I do not think they are still covered."  (*Id.* at 10).  Apparently such evaluations were still covered, however, because on October 30, 2014, Nelson was evaluated by an outside specialist (Dr. Ronnie Sorrow) for her TMJ pain.  (*Id.* at 12).  Dr. Sorrow noted:

> [W]ith the MIO [maximum interincisal opening] being limited for two years we are likely not going to make progress on this, therefore the aim is pain control and relief of the likely muscle spasms.  I will [prescribe] pain medication for two weeks and a muscle relaxer for two weeks, as well as have the patient do jaw [range of motion] exercises with warm heat[.]  [T]his was described to patient.  [A]lso continue the use of bite splint.

(*Id.*).  On December 5, 2014, Nelson requested refills of the muscle relaxer (Flexeril) and pain

---

[2] It appears that nothing happened in this respect for more than two years, but this delay is not at issue in Nelson's complaint.

2

medication (Ultram) that Dr. Sorrow had prescribed. (*Id.* at 13). The MDOC treating dentist noted that Nelson had a follow-up appointment scheduled with Dr. Sorrow for the following week, and said he would allow Dr. Sorrow "to evaluate and re-write [prescription] for meds and refills of these meds if he is so inclined." (*Id.*).

On December 11, 2014, Nelson returned to see Dr. Sorrow. He noted: "Patient here for TMJ re-eval[uation] s/s [signs and symptoms] **almost resolved with medications**, MIO significantly improved, rec[commend] continue ultram and flexeril, **may need flexeril on a longer term basis**, also recommend to continue jaw [range of motion] exercises [as needed], soft diet [as needed]." (*Id.* emphasis added)).

On January 13, 2015, Nelson kited about "excruciating" jaw pain. (*Id.*). She asked that her Flexeril be renewed, but her records indicate: "The dental director [Choi] was notified of the problem. **The director stated TMJ problems are not treated in MDOC and the continuation of the meds would not be considered.**" (*Id.* at 14 (emphasis added)). Thus, despite having the record from Nelson's December 11, 2014 appointment with Dr. Sorrow, Choi refused to continue Nelson's prescriptions for Flexeril and Ultram. After that, it appears she was only given a detail for a soft mechanical diet.

Nelson now brings this civil rights action pursuant to 42 U.S.C. § 1983, alleging that Choi's refusal to provide continued, necessary treatment for her TMJ disorder constitutes deliberate indifference to a serious medical need in violation of the Eighth Amendment.

### B.     Standard of Review

Pursuant to Federal Rule of Civil Procedure 56, the Court will grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Pittman v. Cuyahoga*

*County Dep't of Children & Family Servs.*, 640 F.3d 716, 723 (6th Cir. 2011).  A fact is material if it might affect the outcome of the case under governing law.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In determining whether a genuine issue of material fact exists, the Court assumes the truth of the non-moving party's evidence and construes all reasonable inferences from that evidence in the light most favorable to the non-moving party.  *See Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006).

The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion, and must identify particular portions of the record that demonstrate the absence of a genuine dispute as to any material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009).  "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'"  *Wrench LLC v. Taco Bell Corp.,* 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)).  In response to a summary judgment motion, the opposing party may not rest on its pleadings, nor "'rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact' but must make an affirmative showing with proper evidence in order to defeat the motion."  *Alexander*, 576 F.3d at 558 (internal quotations omitted).

### C.     Analysis

In his motion, Choi argues that summary judgment is appropriate on Nelson's Eighth Amendment claim.  (Doc. #38 at 10-13).  The Eighth Amendment's Cruel and Unusual Punishment Clause prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain" upon inmates.  *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (internal citations omitted).  "'Deliberate indifference' by prison officials to an inmate's serious medical needs constitutes 'unnecessary and wanton infliction of pain' in violation of the Eighth

Amendment's prohibition against cruel and unusual punishment." *Miller v. Calhoun Cty.*, 408 F.3d 803, 812 (6th Cir. 2005) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).

The Sixth Circuit has explained the standards that a plaintiff must satisfy to state a claim for deliberate indifference to her serious medical needs:

> A claim of deliberate indifference under the Eighth Amendment has both an objective and a subjective component. The objective component requires the existence of a sufficiently serious medical need. To satisfy the subjective component, the defendant must possess a "sufficiently culpable state of mind," rising above negligence or even gross negligence and being "tantamount to intent to punish." Put another way, "[a] prison official acts with deliberate indifference if he knows of a substantial risk to an inmate's health, yet recklessly disregards the risk by failing to take reasonable measures to abate it." Mere negligence will not suffice. Consequently, allegations of medical malpractice or negligent diagnosis and treatment generally fail to state an Eighth Amendment claim of cruel and unusual punishment.

*Broyles v. Correctional Medical Servs., Inc.*, 478 F. App'x 971, 975 (6th Cir. 2012) (internal citations omitted).

Here, Choi argues that Nelson fails to meet the subjective[3] prong of the deliberate indifference test because her "medical records belie the claim that she did not receive any treatment at all for her TMJ." (Doc. #38 at 12). Essentially, then, Choi characterizes this as a case where Nelson "merely disagrees with the treatment she received," claiming that she disagreed with his decision not to do surgery and to treat her instead with warm compresses for her jaw, a soft mechanical diet, and range of motion exercises. (*Id.* at 12-13).

It is true that mere differences of opinion or disagreements between a prisoner and prison

---

[3] Choi does not argue that Nelson does not satisfy the objective prong of the deliberate indifference test, and there can be little dispute that her TMJ disorder qualifies as a serious medical need, as it is more than "mere discomfort or inconvenience." *Talal v. White*, 403 F.3d 423, 426 (6th Cir. 2005); *see also Doyle v. Clark*, 2009 WL 4640650, at *3 (S.D. Ga. Dec. 7, 2009) (assuming, without deciding, that plaintiff's TMJ was a sufficiently serious medical need where the defendant "offer[ed] no evidence, let alone medical evidence, to support her conclusory argument" that it was not).

medical staff over the kinds of treatment a prisoner needs do not rise to the level of deliberate indifference.  *See Umbarger v. Corr. Med. Servs.*, 93 F. App'x 734, 736 (6th Cir. 2004).  In other words, courts distinguish between "cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment."  *Alspaugh v. McConnell,* 643 F.3d 162, 169 (6th Cir. 2011) (internal quotations omitted).  But, Choi's arguments in this respect miss the mark.

Nelson is not asserting a mere disagreement with medical judgments Choi made in connection with treatment he prescribed for her.  Rather, she is alleging that Choi's explicit refusal to continue providing her with prescription medication (Flexeril and Ultram) – when Dr. Sorrow had opined they were medically necessary and had been effective in easing her pain – amounts to deliberate indifference.  The record evidence establishes that, in October 2014, Dr. Sorrow prescribed Flexeril and Ultram for Nelson's TMJ pain.  (Doc. #38-3 at 12).  At a December 11, 2014 follow-up visit, Dr. Sorrow noted that Nelson's symptoms were "almost resolved with medications" and recommended continuing Ultram and Flexeril, the latter on a potentially "longer term basis."  (*Id.* at 13).  In January 2015, however, when Nelson kited about "excruciating" jaw pain, Choi responded by saying that "TMJ problems are not treated in MDOC and the continuation of the meds would not be considered."  (*Id.* at 14).

To the extent Choi relied on MDOC policy in support of his decision to deny this TMJ treatment, Nelson points out that, in March of 2017, the MDOC updated its dental policy to exclude TMJ treatment.  (Doc. #40-3 at 5-6).  The policy in effect as of January 2015, however, did <u>not</u> specifically exclude TMJ treatment.  (*Id.* at 2-3).  Moreover, the MDOC's Dental Services Protocol dated January 5, 2015, specifically provided that "Referrals to Oral Surgeons should be considered for … 8. Cases of chronic [TMJ] dysfunction, when conservative therapy

has not been successful." (Doc. #40-4 at 12-13). In other words, the MDOC policy in effect at the time of the events at issue did not exclude treatment for TMJ, and the protocol actually indicated that <u>surgery</u> should be considered in certain chronic situations. Despite these facts, Choi, who was the MDOC's Regional Dental Director at the time, refused to even continue prescription medications that, by all accounts, were working to alleviate Nelson's pain. When questioned about this at his deposition, Choi had no real explanation or justification for his decision to stop her treatment altogether, saying only, "I don't remember why I made that decision at the time" and "there might be a reason behind it." (Doc. #40-2 at 7, 10).[4]

Given all of this evidence, a genuine issue of material fact exists as to whether Choi's actions in this respect constitute deliberate indifference to a substantial risk of serious harm. Again, this is not a situation where Nelson simply disagrees with the course of treatment prescribed by Choi; rather, Choi decided to completely stop treatment that was alleviating Nelson's pain for reasons he cannot explain and that are not supported in the record. This decision was not consistent with the policy and/or protocol in effect at the time, both of which suggest that treatment – up to and including surgery – should have been considered and provided for chronic TMJ pain. For all of these reasons, Choi's motion for summary judgment should be denied.[5]

---

[4] At oral argument, Choi argued that he may have denied the medications in question due to general concerns about the risk of inmates abusing prescribed medications. However, Choi did not raise this issue in his motion, and he admits that the record contains no evidence that he actually considered potential addiction issues when he decided not to continue Nelson's medications. Choi also argued that English is not his first language, and that he therefore may not have fully understood all of the questions asked of him at his deposition. Again, Choi did not raise this issue in his motion, and his deposition transcript does not suggest that he was unable to understand the questions asked of him. Accordingly, neither of these arguments is a valid basis for granting Choi's motion for summary judgment.

[5] Choi also argues that he is entitled to summary judgment on qualified immunity grounds. (Doc. #38 at 13-16). Determining the applicability of qualified immunity requires a two-step

## III.  CONCLUSION

For the reasons set forth above, **IT IS RECOMMENDED** that Choi's Motion for Summary Judgment (**Doc. #38**) be **DENIED**.

Dated: January 19, 2018          s/David R. Grand

Ann Arbor, Michigan          DAVID R. GRAND

                                       United States Magistrate Judge

## NOTICE TO THE PARTIES REGARDING OBJECTIONS

Within 14 days after being served with a copy of this Report and Recommendation and Order, any party may serve and file specific written objections to the proposed findings and recommendations and the order set forth above. *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1). Failure to timely file objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have. *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). Copies of any objections must be served upon the Magistrate Judge. *See* E.D. Mich. LR 72.1(d)(2). A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1). Any such response

---

inquiry into whether the facts, when viewed in the light most favorable to the plaintiff, would permit a reasonable juror to find that: (1) the defendant violated a constitutional right; and (2) the right was clearly established. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001). In conducting this inquiry, the court is "permitted to exercise [its] sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Here, where for the reasons set forth above, Nelson has established a genuine issue of material fact as to whether her clearly established Eighth Amendment rights were violated, Choi is not entitled to qualified immunity.

should be concise, and should address specifically, and in the same order raised, each issue

presented in the objections.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on January 19, 2018.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager